————o————

No. 3976.

(Court of Appeal, Parish of Orleans.)

## MRS. L. M. HAYWARD vs. MRS. J. G. CAMPBELL.

1. The object of putting in default is to secure the creditor his right to demand damages or the dissolution of the contract so that the debtor can no longer defeat his right, by executing or offering to execute the agreement.
2. It follows, therefore, that the rule does not apply to the case of a party who denies the existence of a contract, as it is not probable that he would in such case offer to execute a contract which he entirely ignores.
3. Hence, in such a case the putting in default is not necessary.
4. Under the Roman and the old French law the sale of another's property was valid on the theory that the contract was viewed merely as one productive of obligation; but under the text of our Code, Art. 2452, and of the Code Napoleon, Art. 1599, of which our Code is a literal reproduction, such a sale has become a contract translative of property, hence is a nullity.
5. An action to obtain the restitution of the price paid under a contract of promise of sale is equivalent to an action for the enforcement of the resolutory condition of the contract.

Appeal from Civil District Court, Division E.

W. S. Parkerson, for plaintiff and appellee.

J. Zach. Spearing, for defendant and appellant.

MOORE J.   Alleging that the defendant had promised in writing to sell to her a certain piece of real property situated in the City of New Orleans for the price and sum of $14,000.00; that ten per cent of the purchase price had been deposited with defendant, that upon examination of the title it was discovered that defendant had no title to the property; that thereupon defendant was notified that the title was rejected and a demand made for the return of the ten per cent,

96

($1400.00) deposit, which demand was refused, the plaintiff prays judgment against the defendant for the said sum of fourteen hundred dollars.

The answer simply "denies all and singular the allegations of the petition."

There was judgment for plaintiff as prayed for and defendant appeals.

The facts are that on the 18th April, 1905, plaintiff agreed to purchase of defendant and the latter to sell to plaintiff, the defendant's residence on St. Charles Avenue, in the City of New Orleans and which is fully described in the written contract, for the sum of fourteen thousand dollars, whereof fourteen hundred dollars was then and there paid; the contract stipulating that the "Terms (are) to be determined upon later, after examination of titles." Upon examination of the title the attorney for plaintiff discovered that defendant was not the owner of the entire property which, in its entirety, it was in the contemplation of the parties should be conveyed, but that on the contrary the property was owned in indivision by defendant and her children. Thereupon plaintiff's counsel, some time in May, 1905, "reported the title bad to Mrs. Campbell's, (the defendant's) representative" and on the first day of June, 1905, he addressed and mailed to the defendant the following letter:

NEW ORLEANS, LA., June 1, 1905.

Mrs. William Campbell, City,

Madam— As I have reported adversely on the title, I am requested by Mrs. Hayward to ask that you return me for her account, the $1400.00 deposited with you.

I will surrender receipt upon payment of the money.

Yours respectfully,

(Signed) W. S. PARKERSON.

No reply having been made to this communication, the counsel (Mr. Parkerson) again wrote to the defendant enclosing a copy of his letter of the 1st June. To this letter the following reply was made by defendant's counsel:

NEW ORLEANS, June 9, 1905.

Mr. W. S. Parkerson, City,

Dear Sir— Mrs. William Campbell has referred your letter to me for attention. Replying thereto, I beg leave to advise

that Mrs. Campbell is prepared to give a good and valid title to your client, Mrs. Hayward, at any time she desires it. I will be glad to confer with you at your convenience.

Yours truly,

(Signed) J. Zach. Spearing.

Thereafter the suit followed.

It appears that after the defendant had been advised by the plaintiff's counsel that the defendant had no title to the property and that the title was rejected and after a demand had been made for the return of the amount deposited, the defendant set to work to acquire the interest of her children in the property. This interest she acquired by purchase on the 3rd June, 1905, putting the same of record, however, only on the 9th June, 1905. At no time, so far as the record shows, did she advise the plaintiff that she was contemplating, or negotiating a purchase of her children's interest in the property or, subsequently, that she had acquired such interest; nor does she in her answer to the instant demand of plaintiff for the restitution of the purchase price, nor by her evidence or otherwise tender a perfected title or offer to complete or execute the contract by transferring the property. The argument of her counsel is that notwithstanding these facts plaintiff may not recover what has been paid on account of the purchase price:

First. Because the defendant has not been put in default "in accordance with the provisions of Art. 410 C. .P;" and,

Second. Because, admitting *arguendo*, that the defendant failed to comply with her engagement, the resolution of the contract—the contract not having been dissolved of right —can be enforced only by a suit brought for that purpose.

I.

So far as concerns the question of putting in default the defendant's sole complaint is that it was not made "in accordance with the provisions of Art. 410 C. P." This article directs how the debtor who "has promised to sell, transfer or convey to the creditor, real property, a debt or some other personal right," shall put the creditor (the purchaser) in default by giving the latter a previous written notice "to be and appear on a certain day and at a fixed hour, at the office of some public notary or of some other officer exercising similar

98

functions, or at such other place as he may designate, in order there to receive the sale, cession, transfer or conveyance, which he is ready to make to him, either of the real estate, debt or personal right which he had contracted to transfer to such creditor." It does not require the creditor, (the purchaser), to pursue any such course in order to put the debtor, (the seller) *in mora*.

But more than this, plaintiff was not, under the facts of this case, required to put the defendant in default at all as a condition precedent to the right to demand a resolution of the price, because, in the first place, it would have been legally impossible for the defendant to have complied with her obligation for, as the evidence shows, she was not the owner of the property at the time she made the promise of sale, (18th April, 1905) nor subsequently in May, 1905, and still later on the 1st June following, when the demand was repeated. It would, therefore, have been a vain thing for the plaintiff to have demanded from the defendant the doing of something which the latter could not legally have done. *Lex neminem cogit ad vana.*

In the second place a putting in *mora* was not required because the defendant in her answer denies the existence of the contract. The answer, without limitation, or exception, or reservation or in the alternative, denies "all and every the allegations of plaintiff's petition," the principal allegation of which, and necessarily so as it is the basis of the action, is the existence of the contract. It is not probable that the defendant would offer to execute a contract which she denies ever existed. In Beck vs. Fleitas 37 A. 492-494, the Court, referring to the rule that where the alleged violation of the contract is passive the putting the defendant in *mora* is an indispensible prerequisite to recovery, adds. "But from the very nature of the rule jurisprudence has deduced several unavoidable and important exceptions. The object of putting in default is to secure the creditor his right to demand damages or a dissolution of the contract, so that the debtor can no longer defeat this right, by executing or offering to execute the agreement, Moreau vs. Chauvin 8 R 61; Pratt vs. Craft 20 A. 291. It follows, therefore, that the rule does not apply to the case of a party who absolutely denies the existence of the contract, as it is not probable that he would in such case

offer to execute a contract which he entirely ignores. Hence it has frequently been held by this Court that in such cases the putting in default was not necessary."

In that case the denial of the existence of the contract was made before suit. In the instant case it is made after suit and in a solemn, judicial·pleading. In that case it was said that it was not "*probable*" that the defendant, Fleitas, would "in such case offer to execute a contract which he entirely ignores." In the instant case it is made *certain* that the defendant *could not* at the time of entering into her engagement to sell the property have executed the contract, and that, now that she can make title to it, she *does not* "offer to execute the agreement"

II.

The contract in the instant case was not one by which the defendant was to take steps to transfer the ownership of the property by making arrangements with those who owned it. On the contrary, the contract implied that the defendant was, at the time of contracting, the owner of the property and in the position of one able to convey a title translative of property. On this implied representation the plaintiff obligated herself to buy. It transpired that defendant could not convey such a title because she was not the owner, or, at least, the sole owner of the property, hence, the contract of promise to sell, which, between the parties, "amounts to a sale" C. C. 2462, was a nullity under Art. 2452 C. C. which declares that: "The sale of a thing belonging to another is null; it may give rise to damages, when the buyer knew not that the thing belonged to another person."

This article of the Code, which is a literal reproduction of Art. 1599 of the Code Napoleon, departs from the ancient law. The departure was rendered necessary in consequence of· a fundamental difference between the theory of sales as embraced in the Roman Law and that adopted in the Code Napoleon, and our own Code, the Roman law sale importing simple possession, while that of the Code Napoleon and our own imports not only the transmission of possession but also that of ownership or title. These reasons were the operating cause of ;the insertion of the provision of Art. 1599 in the Code Napoleon, whence they have passed into our own and were expressed by the compilers who framed and the lawgivers who adopted the Code Napoleon.

100

Commenting on Art. 1599 C. N. Baudry Lacantinerie, Vol. 17, pages 89 et seq says that under the Roman and the old French law the sale of another's property was valid on the theory that the contract was viewed merely as one *productive of obligation*. But he shows that, under the text of the Code Napoleon, such a sale has become a contract translative of property, hence the nullity, and if the purchaser demands the nullity the vendor cannot say: "I shall take steps to transfer to you the ownership of the thing sold by making arrangements with the one to whom it belongs." To which the purchaser might reply: "Such was not our understanding. I intended, as was my right, to immediately become the owner, since sale, is in its nature, a contract translative of property." Of course, the commentator adds, that it would be competent for the parties to make any agreement by which A would contract to make arrangements with B to sell the latter's house to C. This learned commentator denies the existence in the contract of the sale of another's property, of the resolutory condition and seems to incline to the view that the sale is dissolved of right (p. 93). At any rate, he says that the action to obtain the restitution of the price is equivalent to the action for the nullity. "The purchaser who has paid the price," says this commentator, "may ask for the nullity by an action to obtain the restitution thereof, if he wishes to guard against the vendor's possible demand for the execution of the contract." (p. 95 par. 119). We regard the present action, which seeks the restitution of the price, as an action to enforce the resolutory condition of the contract; and, as the defendant makes no tender of perfected title, no offer to complete or execute the contract by transferring the property, we regard her attitude in this suit as an apparent desire to keep both the property and its price. This she may not be permitted to do.

The judgment is affirmed.

December 3, 1906.

Rehearing refused January 28, 1907.

Writ granted by Supreme Court March 15, 1907.

Decree Supreme Court May 5, 1907, judgment amended and affirmed.